Filed 3/20/13  In re Israel M. CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re ISRAEL M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046781 |
| v. | (Super. Ct. No. DL041202) |
| ISRAEL M., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Affirmed as modified.

Reed Webb, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Gary Brozio and Meagan J. Beale, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

An amended petition charged Israel M., who was then 17 years old, with two counts of vehicular manslaughter with gross negligence while intoxicated (Pen. Code, § 191.5, subd. (a)) and two counts of driving with a blood alcohol content of .08 percent or more causing bodily injury (Veh. Code, § 23153, subd. (b)). It also alleged he caused bodily injury or death to more than one victim (Veh. Code, § 23558) and personally inflicted great bodily injury (Pen. Code, § 12022.7, subd. (a)).

Minor admitted all of the crimes and enhancements. At the disposition hearing the juvenile court declared minor to be a ward of the court (Welf. & Inst. Code, § 602)[1] and committed him to the "care, custody and control of the Orange County probation officer [*sic*] for commitment to juvenile hall or appropriate facility for 1095 days . . . ."

Minor challenges the determinate nature and the length of his commitment. We modify the disposition order to state a maximum term rather than a fixed term of confinement, and affirm the disposition order in all other respects.

## FACTS

The following statement of facts is taken from the disposition report prepared by the probation department and considered by the juvenile court without objection. There is apparently no dispute about these facts.

Just after 4:00 a.m. on October 1, 2011, minor was driving home in his van with friends after a long night of partying. One of those friends who had seen minor drunk before later told the police he had never seen minor "as drunk as he was that

---

[1] All further statutory references are to this code.

night." Minor had initially agreed to let that friend drive and had given him the keys, but then changed his mind, began arguing, became very aggressive, and demanded to drive, even though that friend had told him he was too drunk to do so.

At first minor appeared to drive fine but then he began swerving, driving faster, and running red lights. Minor's friends in the van kept telling him he should not be driving but he ignored them.

While speeding south in a 35-mile-per-hour zone on Harbor Boulevard near Disneyland in Anaheim, minor ran a red light and collided with two pedestrians who were crossing at an intersection on a green light in a marked crosswalk. The pedestrians, a 66-year-old woman and a 56-year-old woman, were thrown into the air and killed by the blunt force trauma of the collision. An accident reconstructionist estimated the impact speeds at 64 to 69 miles per hour. Minor's blood alcohol level was later determined to be 0.23 percent.

After the collision the van spun out of control and came to rest on a center median about 50 feet from the victims. Minor then told his friends to leave the scene so they would not get into trouble but he stayed in the van and tried to restart it. Minor never checked on the victims or called 911.

When the police arrived minor stated he did not see the pedestrians. He told the police he did not want to kill anyone and said, "Just take me to jail." He lied about what and how much he had been drinking. He also falsely claimed he had been alone in the van, had a green light, and had only been driving about 35 or 40 miles per hour. Minor was uncooperative with the paramedics, became combative during the ambulance ride and had to be restrained to the gurney. Nitrous oxide tanks were found in the van and minor admitted he inhales nitrous oxide for recreation.

DISCUSSION

Minor first contends, and the Attorney General concedes, the 1,095-day fixed term of confinement is not authorized by law.[2]  We agree.  (§ 726, subd. (c); *In re Julian R.* (2009) 47 Cal.4th 487; *In re A.G.* (2011) 193 Cal.App.4th 791, 800.)  It follows the disposition order must be modified to state a maximum, rather than a fixed term.

Minor next contends the term of confinement is inconsistent with the rehabilitative objective of juvenile proceedings and constitutes an abuse of discretion. We are not persuaded.

Rehabilitation is not the only objective at issue.  "The purpose of juvenile delinquency laws is twofold:  (1) to serve the 'best interests' of the delinquent ward by providing care, treatment, and guidance to rehabilitate the ward and 'enable him or her to be a law-abiding and productive member of his or her family and the community,' and (2) to 'provide for the protection and safety of the public.'"  (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614.)

Furthermore, even the rehabilitation objective itself may be furthered by "guidance," including "punishment" in the form of "commitment" to a local detention facility (such as juvenile hall), for a period not to exceed the maximum term of imprisonment that could be imposed upon an adult convicted of the same offenses. (§§ 202, subds. (b) & (e), 726, subd. (c).)

In this context the juvenile court has broad discretion to fashion a disposition, including punishment, consistent with the best interests of the minor and the rehabilitative objective, all "in conformity with the interests of public safety and protection."  (§ 202, subd. (b); *In re Charles G.*, *supra*, 115 Cal.App.4th at pp. 614-615; *In re Michael D.* (1987) 188 Cal.App.3d 1392, 1396.)  We cannot reverse the disposition

---

[2]  We are not sure why the court expressed the term in days but we will hereafter refer to the term as three years.

absent a clear abuse of that discretion.  (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006; *In re Jose M.* (1988) 206 Cal.App.3d 1098, 1104.)  None is apparent.

The record in this case amply supports the maximum term of confinement in the disposition as modified.  At the disposition hearing the court stated it had read and considered the disposition report prepared by the probation department, together with the disposition briefs filed by the parties.  The court also entertained and considered the oral arguments of counsel, including the defense's request for a one-year commitment to juvenile hall and petitioner's request for a three-year commitment to juvenile hall.

The court noted minor's "series of very bad decisions" on the night in question.  The court also noted minor had been arrested a year earlier in another alcohol-related incident, and that he had been given an opportunity to learn from that mistake but had failed to do so.

The court then summarized the dispositive facts as follows:

"The unfortunate thing is that you continued in making bad decisions all evening long, going to parties, getting drunk.  Then you made the tragic decision to ignore your three friends who were attempting to prevent you from driving.

"You weren't alone when you had three other voices of reason that you ignored.  You continued to ignore them while you were running red lights.  It's a bad thing to drink so much, but then you took that further and got behind the wheel of the van.

"And you did not just put [the victims'] lives in danger; but you also put your three friends['] lives in danger.  You didn't care to check on the victims, but rather tried to start the van back up twice and you then instructed your friends to leave so they wouldn't get in any trouble.

"And I don't know if that means that you were trying to leave . . . or if you were more concerned about your car.  Either way you disregarded [the victims].  You

never called 911; but rather got arrested with the paramedics at the scene and demanded to check on your friends.

"The probation officer's report indicates that you also told the police that you had no passengers in the van. And that you had a green light when you hit the victims[,] with a BAC of .23 percent . . . .

"You were not 15, 16, or even just turned 17. You were 17 and a half years old. [Y]ou killed [two women]. By doing so, you've had a rippling effect on their families and their loved ones. The consequences of what you did to them and their loved ones is permanent.

"These two women didn't die of natural causes, or of cancer, or of a heart attack; but because of your recklessness a grandchild won't know her grandmother, because of what you did.

"You are a smart person as evidenced by these grades that I've looked at. You even had mostly A's dating back to 2009 and 2010. Your actions have affected a lot of lives, including yours. And I sincerely hope that you learn from this."

The court concluded by stating it was "mindful of the purpose and goal of juvenile court and the Welfare and Institutions Code section 602. The minor's rehabilitation as well as accountability for his actions are considered."

Thus, when fashioning the disposition, it appears the court properly considered: "(1) the age of the minor, (2) the circumstances and gravity of the offense[s] committed by the minor, and (3) the minor's previous delinquent history." (§ 725.5.)

From all these facts, the trial court could have inferred (1) minor's best interests require an environment providing firm, strict discipline for his out-of-control behavior as evidenced by the current and prior crimes, (2) without such discipline and realignment of his social and moral structure he poses a demonstrated threat to public safety, and (3) minor requires intensive rehabilitative treatment for his alcohol and substance abuse. (Cf. *In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1397.)

The offenses here were particularly egregious. Further, minor's failure to help the victims or even call 911 "exhibits a shocking callousness which requires appropriate treatment and guidance. This conclusion is strengthened when one considers the minor's unrepentant and cavalier attitude following his detention and arrest." (*In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1397.)

Nothing in this record suggests the challenged period of confinement was impermissibly "based solely on retribution grounds (§ 202, subd. (e)(5)) . . . ." (*In re Michael D.*, *supra*, 188 Cal.App.3d at p. 1396.) Similarly, nothing here indicates the challenged period of confinement is cruel and unusual within the meaning of the Eighth Amendment, even when considering the diminished moral culpability of minors as a class. (*People v. Caballero* (2012) 55 Cal.4th 262 [term of years beyond minor's natural life expectancy in nonhomicide case is cruel and unusual].)

Finally, the three-year maximum term of confinement is less than one-third of the 13-year "maximum term of imprisonment that could be imposed on an adult convicted of the . . . offenses . . . ." (§726, subd. (d).)

Under these circumstances the court did not abuse its discretion. To the contrary, it appears the court carefully weighed and appropriately balanced the competing goals of rehabilitation and public safety, as required.

## DISPOSITION

The disposition is modified to state a three-year maximum rather than a 1,095-day fixed term of confinement.  As so modified the disposition is affirmed.


THOMPSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.