Filed 6/16/15  In re C.C. Ca1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re C.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, Plaintiff and Respondent, v. C.C., Defendant and Appellant. | A142378 (Solano County Super. Ct. No. J42131) |

C.C., a minor, appeals from an order of wardship pursuant to Welfare and Institutions Code[1] section 725, subdivision (a).  C.C. contends that the juvenile court abused its discretion in declaring him a ward of the court upon the conclusion of his informal probation because there was no evidence that wardship would advance the purposes of the juvenile court law.  Specifically, C.C. asserts that there was no evidence that wardship was necessary to ensure his attendance at school or that the court's continued interference would aid in his rehabilitation.  However, seeing no abuse of discretion in the juvenile court's order of wardship, we affirm.

---

[1] All further undesignated statutory references are to the Welfare and Institutions Code.

1

# I. BACKGROUND

On April 23, 2013, C.C. attacked another minor, J.H., at a park in Dixon, California. C.C. admitted that the altercation occurred and reported that it stemmed from certain hateful and disparaging comments that J.H. made about C.C.'s Mexican ethnicity four days earlier. C.C. admitted wrongdoing, recognizing that his behavior was not acceptable.

On August 7, 2013, an original wardship petition under section 602 alleged that C.C. committed three misdemeanors including battery (Pen. Code, § 242), assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)), and disturbing the peace by fighting (Pen. Code, § 415, subd. (1)). On October 2, 2013, C.C. admitted that he committed disturbing the peace by fighting in exchange for dismissal of the remaining counts and a maximum confinement of three months. On November 3, 2013, the court placed the minor on six-months informal probation without wardship under section 725, subdivision (a). The court ordered appellant to "[m]aintain acceptable grades, behavior and attendance" as one of his conditions of probation.

C.C. had a history of truancy throughout 2012 and 2013. On January 6, 2014, upon C.C.'s admission, the minor was found to be a habitual truant. On April 21, 2014, although the school district indicated that his attendance had improved, C.C. was again found to be a habitual truant.

On April 28, 2014, the court conducted C.C.'s section 725 review. C.C.'s probation officer, Carmen Gomez, deemed the minor's grades and behavior acceptable, but his attendance at school unacceptable. The court was prepared to follow the recommendation of the probation department and make the minor a ward of the court. However, defense counsel objected to wardship, indicating that C.C. paid his fines in full and that his drug tests were negative. In response, the court stated: "It's all about school." Specifically, the juvenile court, aware of C.C.'s involvement with truancy court, thought wardship would be in the minor's best interest as an additional incentive for him to go to school. Ultimately, the court decided to continue the matter.

On July 1, 2014, the court held a contested hearing on C.C.'s status pursuant to section 725 at which the minor's grades, tardiness, and absences from school were discussed. C.C.'s mother testified that he would likely graduate one year behind the rest of his classmates. She said that the minor aspired to finish high school, but was not very studious. In regard to C.C.'s absences, his mother testified that the minor skipped school while she was working because the walk from their house was too long. When she stopped working in November 2013, C.C.'s mother would drive him to school, but C.C. would still be two or three minutes late because she also had to take her other children to school in the morning.

Ms. Gomez testified that she spoke with Ms. Ramos, principal of C.C.'s school, who said C.C. arrived late to school fifty percent of the time and that he had a deficient amount of credits. Ms. Gomez also testified that the minor was short of the required fifty hours of community service he had to complete. Moreover, the hours he did complete were not acceptable because they were for his father and uncle rather than a nonprofit organization. Ms. Gomez recommended that C.C. be made a ward because he was "questionable with school and his attendance" and did not complete the required community service hours. On cross-examination, Ms. Gomez testified that the minor had improved in school, improved his attendance, had no positive drug tests, paid his restitution fine, had not picked up any new citations or charges, had been cooperative with her, and had participated in truancy court.

At the conclusion of the hearing, the juvenile court converted C.C.'s informal probation to wardship. The court reasoned, "it is in the minor's interest to go to wardship, because I think without it, his chances of graduating from high school are dim. And I'm not doing it to punish him. I'm doing it to give him some incentive to finish school, since whatever we've done so far has not really kicked into gear." The court told the minor, "if you go to school, get there on time, go to class, pass your classes, you're going to get this done pretty quick. Finish the actual amount of community service you really owe. But you can't be late. You can't skip school. You got to catch up on your

3

credits. That's the whole hook up here." On July 9, 2014, C.C. filed a timely notice of appeal from the juvenile court's determination of wardship.

## II. DISCUSSION

We review a juvenile court's dispositional order under the abuse of discretion standard. (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329–1330; *In re Todd W.* (1979) 96 Cal.App.3d 408, 416.) When we review this kind of order, "[w]e must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." (*In re Lorenza M.* (1989) 212 Cal.App.3d 49, 53.) "It is not the responsibility of this court to determine what we believe would be the most appropriate placement for a minor. This is the duty of the trial court, whose determination we reverse only if it has acted beyond the scope of reason." (*In re Khamphouy S.*, (1993) 12 Cal.App.4th 1130, 1135.) "[D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Giminez*, (1975) 14 Cal.3d 68, 72.)

Section 725, subdivision (a), states: "After receiving and considering the evidence on the proper disposition of the case, the court may enter judgment as follows: [¶] (a) If the court has found that the minor is a person described by Section 601 or 602, by reason of the commission of an offense . . . it may, without adjudging the minor a ward of the court, place the minor on probation, under the supervision of the probation officer, for a period not to exceed six months. *The minor's probation shall include the conditions required in Section 729.2 except in any case in which the court makes a finding and states on the record its reasons that any of those conditions would be inappropriate . . . . If the minor fails to comply with the conditions of probation imposed, the court may order and adjudge the minor to be a ward of the court.*" (§ 725, subd. (a), italics added.) Pursuant to section 729.2, subdivision (a): "If a minor is found to be a person described in Section 601 or 602 and the court does not remove the minor from the physical custody of the parent or guardian, *the court as a condition of probation*, except in any case in which the court makes a finding and states on the record its reasons that that condition

4

would be inappropriate, shall:  [¶] (a) *Require the minor to attend a school program approved by the probation officer without absence*."  (§ 729.2, subd. (a), italics added.)

C.C. argues that the purposes of juvenile wardship proceedings are to "treat and rehabilitate the delinquent minor, and to protect the public from criminal conduct."  (*In re Jose C.* (2009) 45 Cal.4th 534, 555; § 202, subd. (a).)  He claims that these purposes were not served by converting his case from informal probation to wardship because he had already improved his school attendance and that attendance was being monitored in truancy court.  Thus, wardship proceedings were duplicative and unnecessary.

However, in order to further the purposes of the juvenile court law, "the juvenile court has statutory authority to order delinquent wards to receive 'care, treatment, and guidance that is consistent with their best interest, that holds them accountable for their behavior, and that is appropriate for their circumstances.' "  (*In re Charles G.* (2004) 115 Cal.App.4th 608, 615.)  It was not beyond the scope of reason for the juvenile court in this case to order the minor to receive guidance that was consistent with his best interest by conditioning his informal probation on the maintenance of "acceptable grades, behavior and attendance."  (See *In re Charles G.*, at p. 615.)  Nor was it an abuse of discretion to convert C.C.'s informal probation to wardship once the minor failed to adequately comply with this probation condition.  In fact, the juvenile court explicitly stated it "think[s] that it is in the minor's interest to go to wardship, because . . . without it, his chances of graduating from high school are dim."  Here, the record contains substantial evidence that appellant did not meet the acceptable standard of school attendance.  Indeed, although his probation officer deemed his grades and behavior acceptable, she determined that the minor's attendance at school was still unacceptable.

C.C. also contends, however, that it was an abuse of discretion for the juvenile court, which "did not obtain updated information as to how [C.C.] finished the school year," to rely on an out-of-date record.  While it would certainly have been the better course of action to supply the juvenile court with up-to-date information in this case, we believe that the record that was before the court was sufficient to support the order of wardship.  In short, even assuming that C.C. had completed the school year with perfect

5

attendance and no other issues, the information in the record describing his long-term struggles with attendance and credit deficiency was adequate to justify the juvenile court's conversion of this matter from informal probation to wardship.

Moreover, even if we were to conclude that the juvenile court abused its discretion in deeming the minor's school attendance over the six months inadequate, C.C. still did not comply with the probation condition requiring the completion of fifty hours of community service. The record shows that not only was he short of the fifty hours, but that the hours he actually finished were completed with his father and not an appropriate non-profit agency. Standing alone, this failure to comply with the community service condition imposed by the court was sufficient to "adjudge the minor to be a ward of the court" under the statute, regardless of the school attendance issue. (§ 725, subd. (a).)

### III. DISPOSITION

We affirm the disposition of the juvenile court.

_____
REARDON, Acting P. J.

We concur:


_____
RIVERA, J.


_____
STREETER, J.

7